John W. FRANDSEN, Plaintiff–Appellant,

v.

WESTINGHOUSE CORPORATION, Defendant–Appellee.

No. 93–4154.

United States Court of Appeals, Tenth Circuit.

Jan. 23, 1995.

B. Ray Zoll of Zoll & Branch, Salt Lake City, UT, on the brief for plaintiff-appellant.

Tracy H. Fowler of Campbell, Maack & Sessions, Salt Lake City, UT, for defendant-appellee.

Before KELLY, HENRY, Circuit Judges, and VAN BEBBER, District Judge.*

VAN BEBBER, District Judge.

Plaintiff John W. Frandsen appeals an order of the district court granting summary judgment to defendant Westinghouse Corporation on the basis of issue preclusion resulting from other litigation. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

## I. Background

Plaintiff-appellant John W. Frandsen, an electrician, alleges that he suffered serious injuries while performing electrical installation work at a construction project in Nevada. The injuries occurred when he was testing the voltage on an electrical panel board by inserting an insulated metal probe into holes housing set screws on a "plug-on unit." As he completed the procedure, the probe came into contact with a metal plate that was later discovered to be grounded. An electrical arc spread toward plaintiff and burned him. Plaintiff suffered electrical burns over approximately 20 percent of his body.

The panel board consisted of components purchased from Cutler–Hammer, a division of Eaton Corporation, and included the plug-on unit at issue in this case. Cutler–Hammer designed and manufactured the plug-on unit which consisted of a circuit breaker manufactured by Westinghouse Corporation and a hinged metal adapter plate manufactured by Cutler–Hammer. The adapter plate enabled the circuit breaker to be plugged into an electric panel board. The Westinghouse circuit breakers are integral parts of the Cutler–Hammer plug-on units.

Plaintiff brought a diversity jurisdiction strict product liability action against Eaton in the United States District Court for the District of Utah, captioned *Frandsen v. Eaton Corporation*, Civil No. 90–C–553G (the "Ea-

---

* The Honorable G. Thomas Van Bebber, United States District Judge for the District of Kansas, sitting by designation.

ton Case"). The case was tried to a jury which found, in a special verdict returned on July 30, 1992, that the plug-on unit was defective in design but not in an unreasonably dangerous condition. Judgment was entered in favor of Eaton and plaintiff's cause of action was dismissed. Plaintiff appealed the judgment, but his appeal was later dismissed because it was jurisdictionally defective. *See Frandsen v. Eaton Corp.,* No. 92–4142 (10th Cir. Feb. 25, 1993).

On August 8, 1992, plaintiff filed the present action in which he reasserts his theories of product defect, this time naming Appellee Westinghouse as the defendant. The district court granted Westinghouse's motion for summary judgment and dismissed the claim as barred by the doctrine of res judicata.

## II. Standard of Review

■ We review the district court's grant of summary judgment de novo, applying the same legal standard used by the district court. *See Thomas v. Wichita Coca–Cola Bottling Co.,* 968 F.2d 1022, 1024 (10th Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 635, 121 L.Ed.2d 566 (1992). Under Fed.R.Civ.P. 56(c), summary judgment is proper only if the evidence, reviewed in the light most favorable to the plaintiff, the party opposing the motion, demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. *See Deepwater Inv., Ltd. v. Jackson Hole Ski Corp.,* 938 F.2d 1105, 1110 (10th Cir.1991). A "material" fact is one "that might affect the outcome of the suit under the governing law," *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986), and a "genuine" issue is one for which "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Id.* We also review de novo a district court's conclusions of law as to the applicability of res judicata. *Clark v. Haas Group, Inc.,* 953 F.2d 1235, 1237 (10th Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 98, 121 L.Ed.2d 58 (1992).

## III. Analysis

The sole issue on appeal is whether plaintiff is precluded from bringing this action by the jury's verdict and the final judgment in favor of Eaton in the prior litigation. The facts of the case, as well as the arguments of counsel on the summary judgment motion and on appeal, require that we examine the issue in terms of both res judicata and collateral estoppel. For the reasons set out below, we find that the instant action is barred by the doctrine of collateral estoppel.

■ A preliminary question is whether state or federal law governs the issues of res judicata and collateral estoppel in relation to successive diversity jurisdiction cases in federal court. There is some confusion in this circuit as to whether federal or state rules should apply. *American Motorists Ins. Co. v. General Host Corp.,* 946 F.2d 1482 (10th Cir.), *vacated in part,* 946 F.2d 1489 (10th Cir.1991). The *American Motorists* Court identified the inconsistent decisions [1] and predicted that at some point the Tenth Circuit would "affirm the language of *Petromanagement [Corp. v. Acme–Thomas Joint Venture,* 835 F.2d 1329 (10th Cir.1988) ] and the Restatement and apply federal preclusion law except where the matter is distinctly substantive." *Id.* at 1485. The court, however, declined to make such a holding, finding instead that it was not necessary to resolve the issue before it. *Id.* at 1486.

Similarly, we find that such a determination is not necessary to resolve this case. It

---

**1.** The court in *Federal Ins. Co. v. Gates Learjet Corp.,* 823 F.2d 383 (10th Cir.1987) implicitly ruled that a federal court sitting in diversity applies state law in determining the collateral estoppel effect of a prior federal court diversity judgment. *Id.* at 386. In *Petromanagement Corp. v. Acme–Thomas Joint Venture,* 835 F.2d 1329 (10th Cir.1988), the court adopted the approach taken by Section 87 of the Restatement (Second) of Judgments (1982) which advocates applying federal preclusion law except for those

aspects which are clearly substantive. *Id.* at 1333. Similarly, the court in *Lowell Staats Min. Co., Inc. v. Philadelphia Elec. Co.,* 878 F.2d 1271 (10th Cir.1989) stated: "As a general rule we apply federal law to the res judicata issue in successive diversity actions, but federal law will incorporate state law when the issue is more distinctly substantive, as with the concept of 'privity.'" *Id.* at 1274 (citing *Petromanagement,* 835 F.2d at 1333).

is not necessary to make a choice between Utah and federal rules relating to collateral estoppel to resolve the issue before the court. We have previously recognized that collateral estoppel requirements under Utah law are "substantially the same as under federal law." *Murdock v. Ute Indian Tribe of Uintah & Ouray Reservation,* 975 F.2d 683, 687 n. 5 (10th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1879, 123 L.Ed.2d 497 (1993); *see also Atiya v. Salt Lake County,* 988 F.2d 1013 (10th Cir.1993) (stating collateral estoppel requirements under Utah law). Thus, in this case, the outcome is the same whether we apply federal law or Utah law to the question of collateral estoppel.

 Although the district court's order granting defendant's motion for summary judgment states that plaintiff's claim against Westinghouse is barred by the doctrine of res judicata, it appears that the decision was actually based on collateral estoppel. "The doctrines of res judicata, or claim preclusion, and collateral estoppel, or issue preclusion, are closely related." *Sil–Flo, Inc. v. SFHC, Inc.,* 917 F.2d 1507, 1520 (10th Cir.1990). Res judicata generally applies when there is a final judgment on the merits which precludes the parties or their privies from relitigating the issues that were decided or issues that could have been raised in the earlier action. *See Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980). A claim is barred by res judicata when the prior action involved identical claims and the same parties or their privies. *Satsky v. Paramount Communications, Inc.,* 7 F.3d 1464, 1467 (10th Cir.1993). Collateral estoppel, however, does not always require that the parties be the same. Instead, collateral estoppel "requires an identity of issues raised in the successive proceedings and the deter-

mination of these issues by a valid final judgment to which such determination was essential." *Sil–Flo, Inc.,* 917 F.2d at 1520.

In its order granting summary judgment, the district court held that "essentially the same product is involved in this litigation as was involved in the earlier case in this court of *Frandsen v. Eaton Corporation,* Civil No. 90–C–553G. The plaintiff in that case and the plaintiff in this case are the same person." *Frandsen v. Westinghouse Corp.,* No. 92–C–709W, Order Granting Defendant's Motion for Summary Judgment at 2. The court made similar findings during the motion hearing.[2] At the same time, the court made no specific findings on the question of whether Eaton and Westinghouse were in privity, a prerequisite to a finding of res judicata. These statements by the district court indicate that its finding of preclusion was based on collateral estoppel. After reviewing the relevant facts, we reach the same conclusion.[3]

Collateral estoppel will bar a claim if four elements are met:

(1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party or in privity with a party to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.

*United States v. Rogers,* 960 F.2d 1501, 1508 (10th Cir.) (quoting *In re Lombard,* 739 F.2d 499, 502 (10th Cir.1984)), *cert. denied,* —— U.S. ——, 113 S.Ct. 817, 121 L.Ed.2d 689 (1992).

**2.** During the hearing, the court stated: "It appears to me so clear that what was being talked about in this earlier lawsuit was the entire assembly [and] was not only the modification by the addition of the hinge metal plate ..." Appellant's Appendix at 63. The court later stated: "But the whole product in issue here was the circuit breaker of the plug-on. The whole thing was at issue in this case." *Id.* at 70.

**3.** The district court may have assumed that the intricacies of products liability law, which makes entities in the line of distribution liable for in-

demnification or contribution under some circumstances, created privity between Westinghouse and Eaton. *See* Louis R. Frumer and Melvin I. Friedman, *Products Liability* § 5.06 (perm. ed.) (discussing plaintiff's ability to bring suit); *id.* at § 15.03[3](e) (discussing indemnification and relationship of manufacturers of component parts). However, because the district court did not make its reasoning explicit, we choose to base our analysis on collateral estoppel.

There is no question that elements (2), (3), and (4) are met. The prior action was tried and judgment was entered after a jury verdict, therefore, it was fully adjudicated on the merits. The party against whom collateral estoppel is being invoked, the plaintiff, was a party in the prior action. In addition, there is no indication that plaintiff did not have a full and fair opportunity to litigate the issue in the prior case.[4]

The only question remaining is whether the issues decided in the Eaton Case are identical to the ones presented in this litigation. Plaintiff's claims of strict product liability, negligence, and breach of express and implied warranties against Westinghouse are identical to the claims he brought against Eaton. The claims all revolve around the issue of whether the product was in an unreasonably dangerous condition, and the Eaton jury found that the plug-on unit was not. The only question, then, is whether the Westinghouse circuit breaker is a part of the plug-on unit, or whether it is a separate product. If this is but one product, then the issue decided in the Eaton Case is identical to the one presented in this case.

Plaintiff's contention that these are two separate products is not supported by the record. There is no indication whatsoever that the product at issue in the Eaton Case, the plug-on unit, was only the hinged metal plate manufactured by Eaton. Rather, the Westinghouse circuit breaker was stipulated in the pretrial order to be "an integral part" of the Eaton plug-on unit. The term "plug-on unit" was used in the Eaton Case to refer to the Westinghouse circuit breaker modified by the Eaton adapter plate. Plaintiff's expert, in his written report, referred to the unit as a "circuit breaker" and made no distinction between the circuit breaker itself and the metal plate.

The uncontroverted facts establish that the issue previously decided, that the plug-on unit was not in an unreasonably dangerous condition, is identical to the issue presented in this case. The requirements of collateral estoppel are met, and plaintiff is barred from bringing this action against Westinghouse.

AFFIRMED.

---

4. Plaintiff argued at the summary judgment motion hearing that he only discovered three days before trial that Westinghouse had taken some remedial measures in the design of the circuit breaker. Plaintiff, however, also acknowledged that he knew at least eight months prior to trial that Westinghouse had manufactured the circuit breaker. There was adequate opportunity for plaintiff to have brought Westinghouse into that action, had he wished to do so.