**F I L E D**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

HAXTUN TELEPHONE COMPANY,

    Plaintiff-Counter-
Defendant - Appellant,

v.

AT&T CORP.,

    Defendant-Counter-
Claimant - Appellee.

No. 01-1582
D.C. No. 97-N-1484
(D. Colorado)

**ORDER AND JUDGMENT** *

Before **BRISCOE** , Circuit Judge, **BRORBY** , Senior Circuit Judge, and **HARTZ** , Circuit Judge.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

---

*     This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Plaintiff Haxtun Telephone Company (Haxtun) appeals the district court's entry of summary judgment and dismissal of Haxtun's cause of action for lack of standing. Haxtun brought suit against AT&T Corporation (AT&T) claiming breach of contract and violation of Haxtun's regulatory tariff due to AT&T's alleged failure to pay Haxtun money for providing access telephone service to its local customers. The district court determined that Haxtun did not have standing to pursue its claims because the access charges at issue belonged to a third party, Zonicom, Inc. (Zonicom), and the evidence did not support Haxtun's claim that it had acquired Zonicom's legal right to payment from AT&T. Subsequently, Haxtun moved to amend the judgment to allow an award of money that was undisputedly owed to Haxtun for AT&T's local access. The district court granted that motion as to the undisputed amount, but denied Haxtun's request for interest or penalties for AT&T's late payment. We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 and we affirm.

## I.

Haxtun, a local exchange carrier serving Haxtun, Fleming, and Crook, Colorado, provides access telephone services to AT&T, a long distance carrier, in order for AT&T to provide long distance service to Haxtun's local customers. Haxtun's bills to AT&T for originating and terminating access services are governed by a tariff filed with the Federal Communications Commission (FCC).

In 1995, Zonicom was created as a "competitive access provider" with its own tariff filed with the FCC. Zonicom leased lines from Haxtun in Fleming, Colorado, purportedly to receive interstate calls directed to a computerized chat line. In January and February 1996, Zonicom attempted to bill AT&T directly for access service on interstate calls terminating in Fleming. AT&T refused to pay because it had not ordered service from Zonicom, and because AT&T believed Zonicom was engaged in an unlawful revenue sharing arrangement with a chat line. Soon after, Zonicom wrote to inform AT&T that the amounts previously billed should not have been billed by Zonicom and that the carrier traffic at issue would be billed by Haxtun. Zonicom also wrote Haxtun a letter confirming their oral agreement to verify terminating carrier service to Fleming, Colorado, as Haxtun's traffic rather that Zonicom's traffic. According to this letter, Zonicom agreed to invoice Haxtun for terminating traffic in Fleming, and Haxtun, in turn, agreed to include the Zonicom traffic in Haxtun's monthly bills to long distance carriers, including AT&T.

With the addition of the Zonicom traffic, Haxtun's monthly bills to AT&T increased by over two thousand percent. Suspecting the addition of Zonicom's unwanted carrier traffic, but unable to separate it from the traffic AT&T actually ordered from Haxtun, AT&T began sending Haxtun payments for amounts based on the average monthly amount paid to Haxtun prior to the increase.

-3-

Haxtun sued, alleging AT&T improperly withheld payment for Haxtun's access services. During discovery, AT&T obtained evidence that Haxtun was adding Zonicom charges to its bills, and AT&T moved the district court to stay the proceedings and refer the case to the FCC to determine which carrier's charges were at issue. The district court granted that motion, but Haxtun did not file a complaint with the FCC until approximately fifteen months later. In that complaint, Haxtun for the first time alleged that AT&T wrongfully withheld payment to Haxtun and Zonicom jointly. The FCC subsequently determined that the disputed charges in the case were for access services provided by Zonicom and that therefore Haxtun's claims before the FCC were substantially different from its claims before the district court. Consequently, the FCC dismissed the case without prejudice to permit the district court to address threshold issues of standing and joinder and to determine whether Haxtun's claims remained appropriate for primary jurisdiction referral to the FCC.

At a status conference held after the FCC's dismissal, the district court denied Haxtun's motion to join Zonicom as a plaintiff. AT&T subsequently moved for summary judgment, arguing that Haxtun did not have standing to sue and was not the real party in interest because it sought to enforce the rights of a third party, Zonicom. The district court granted AT&T's motion and dismissed Haxtun's case with prejudice, concluding that Haxtun lacked standing. Doing so,

-4-

the court rejected Haxtun's argument that it was assigned the legal right to sue on Zonicom's behalf pursuant to its billing agreement. Haxtun subsequently moved to amend the judgment to allow for an award of $45,725, an amount that AT&T conceded it owed for local access charges now clearly attributable to service actually performed by Haxtun during the relevant period. The district court granted the uncontested motion, but denied Haxtun's request for interest on the award. This appeal followed.

## II.

We review the district court's grant of summary judgment de novo, applying the same legal standard used by the district court. *Amro v. Boeing Co.,* 232 F.3d 790, 796 (10th Cir. 2000). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When applying this standard, "we examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing the motion." *McKnight v. Kimberly Clark Corp.,* 149 F.3d 1125, 1128 (10th Cir. 1998) (quotation omitted). We also review de novo the district court's determination as to standing. *Loving v. Boren,* 133 F.3d 771, 772 (10th Cir. 1998). "Plaintiffs bear the burden of proving standing with the manner and degree of

evidence required at the particular stage of the litigation." *Hutchinson v. Pfeil,* 211 F.3d 515, 519 (10th Cir. 2000) (quotation omitted). Therefore, "[w]hen the procedural posture of the case is a Federal Rule of Civil Procedure 56 motion for summary judgment and plaintiff['s] standing is at issue, to prevail on such a motion a plaintiff must establish that there exists no genuine issue of material fact as to justiciability, and mere allegations of injury, causation, and redressability are insufficient." *Essence, Inc. v. City of Fed. Heights,* 285 F.3d 1272, 1280 (10th Cir.) (quotation omitted), *cert. denied,* 123 S. Ct. 411 (2002); *cf. Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 883-84 (1990).

**III.**

In its brief on appeal, Haxtun contends that it has demonstrated standing pursuant to a billing agreement between Haxtun and Zonicom. The parties agree that a valid assignment of legal rights under Colorado law from Zonicom to Haxtun would confer standing on Haxtun to sue AT&T for access charges originally incurred by Zonicom. They disagree over the district court's conclusion that Haxtun produced insufficient evidence to show such an assignment. As in the district court, Haxtun points to two letters, a series of invoices from Zonicom to Haxtun, and affidavits by Zonicom Director Clint Frederick and Haxtun's Johnny Ross to argue that, despite the lack of a written assignment agreement, the actions and conduct of the parties evidence a valid assignment of Zonicom's legal rights.

-6-

After reviewing this evidence, we also conclude that it was insufficient to demonstrate Zonicom's assignment of legal rights so as to give Haxtun standing to sue on the disputed charges. We agree with the district court that, at most, the evidence reflects "a deliberate attempt on the part of Zonicom to disguise its bills for unauthorized service as though they are Haxtun's charges in order to avoid the possibility that AT&T would again refuse to pay Zonicom's bills." Aplt. App. Vol. 3 at 449. Haxtun's arguments to the contrary are unavailing, as they do not persuade us that Haxtun has met its threshold burden to establish standing. *See FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 231 (1990) ("[I]t is the burden of the party who seeks the exercise of jurisdiction in his favor, clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute.") (quotations omitted).

## IV.

Likewise, Haxtun's contention that Zonicom subsequently ratified Haxtun's claims against AT&T is without merit. The district court denied Haxtun's motion to join Zonicom as a plaintiff on February 1, 2001. At that time, the court concluded "that Haxtun had knowledge of all the facts contained in its complaint with the [Federal Communications] Commission before it filed its complaint in this court." Aplt. App., Vol. 3 at 450. The court explained that ruling, stating that "[i]t was evident to me then, and it is still evident to me now, that '[Haxtun] is

-7-

trying to backtrack and cover up things that [it] knew three years ago." *Id.* (quotation omitted). Haxtun then filed the affidavit of Clint Frederick, the director of Zonicom, in which he states "Zonicom has been aware of the above-captioned action since its inception and supports and ratifies Haxtun's claims against AT&T on its behalf." *Id.* Vol. 2 at 302. Haxtun contends that this statement from Mr. Frederick's affidavit constitutes a valid ratification under Fed. R. Civ. P. 17.

> Federal Rule 17 states that
>
> [n]o action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

Fed. R. Civ. P. 17(a). As explained in the advisory committee notes, this section of the rule was added in the interests of justice:

> This provision keeps pace with the law as it is actually developing. Modern decisions are inclined to be lenient when an honest mistake has been made in choosing the party in whose name the action is to be filed . . . . It is intended to prevent forfeiture when determination of the proper party to sue is difficult or when an understandable mistake has been made.

*Id.* advisory committee's note (1966 Amend.). In this case, we conclude that the purported ratification by Zonicom is not effective and does not preclude summary judgment. "A proper ratification under Rule 17(a) requires that the ratifying party (1) authorize continuation of the action and (2) agree to be bound by its result."

-8-

*ICON Group, Inc. v. Mahogany Run Dev. Corp.,* 829 F.2d 473, 478 (3d Cir. 1987). Although Frederick's affidavit claims to "support and ratify" Haxtun's claims against AT&T on behalf of Zonicom, it includes no language evidencing an agreement to be bound by the result in Haxtun's action. Indeed, Zonicom has already demonstrated its unwillingness to be bound by Haxtun's case by filing its own action against AT&T on March 20, 2002, seeking recovery of the same access charges disputed in the instant action.

Moreover, the record in this case confirms the district court's observations that Haxtun knew of Zonicom's claims well before it filed its complaint and yet chose to represent to that court that the disputed charges were solely for Haxtun's access services. We agree with the district court that Haxtun "deliberately concealed the true sources of the charges it sought." Aplt. App., Vol. 3 at 527. Given Haxtun's overall conduct in this case, as fully explained in the district court's orders, the allowance of such a belated attempt at ratification would not further the interests of justice. Therefore, the district court did not abuse its discretion by rejecting Haxtun's claim that summary judgment was improper due to Rule 17. *See Scheufler v. Gen. Host Corp.,* 126 F.3d 1261, 1270 (10th Cir. 1997) (holding that district court's decision under Rule 17 is reviewed for abuse of discretion).

## V.

Finally, Haxtun contends that the district court erred in refusing to award interest on the undisputed access charge amounts owed by AT&T. Specifically, Haxtun argues that the "filed rate doctrine," as codified in the Communications Act, prohibits the district court from deciding on its own that AT&T need not pay Haxtun interest on money admittedly due Haxtun under its tariff. We disagree.

The filed rate doctrine in this context specifies that a filed tariff governs the relationship between a common carrier and its customers as to charges, and forbids a carrier from either charging or receiving any rate that is "greater or less or different" from those rates properly filed with the FCC. *See* 47 U.S.C. § 203(c)(1). According to Haxtun, because its filed tariff specifies a fixed rate for interest on overdue payments, the district court was obligated to award interest at that rate for the undisputed amount of money owed by AT&T for access services provided solely by Haxtun. Haxtun relies on *Cincinnati Bell Telephone Co. v. Allnet Communication Services, Inc.,* 17 F.3d 921 (6th Cir. 1994), as authority for its argument that the district court has no discretion in awarding prejudgment interest. That case, however, merely held that once the district court determined that interest was due for late payment, the actual rate of interest was determined by the filed tariff. Haxtun points to no direct authority compelling us to retreat from this Circuit's controlling law that affords a district court the discretion to

-10-

determine whether a party is entitled to an award of interest in the first instance. *See Malloy v. Monahan,* 73 F.3d 1012, 1019 (10th Cir. 1996) (holding that prejudgment interest is not recoverable as a matter of right, and a district court's refusal to award interest is reviewed for abuse of discretion).

In denying Haxtun's request for interest, the district court determined that Haxtun deliberately misrepresented its claims and that any delay in payment from AT&T was solely due to Haxtun's conduct throughout the litigation. After independently reviewing the record, we agree with these determinations and conclude that the district court did not abuse its discretion in refusing to award Haxtun interest on the amount discovered to have been rightfully owed by AT&T.

The judgment of the United States District Court for the District of Colorado is AFFIRMED.

Entered for the Court

Wade Brorby
Senior Circuit Judge