**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 27 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

CCC CORPORATE SERVICES, INC., a
Texas corporation, as assignee of Lone Star
Electronics Corp., a Texas corporation,

      Plaintiff-Counter-Defendant -
      Appellant,

v.

SNELL & WILMER, L.L.P.,

      Defendant-Counter-Claimant -
      Appellee.

No. 03-4045
(D. Utah)
(D.Ct. No. 2: 01-CV-684-PGC)

---

**ORDER AND JUDGMENT**[*]

---

Before **TACHA**, Chief Circuit Judge, **BRORBY**, Senior Circuit Judge, and
**KELLY**, Circuit Judge.

---

Appellant CCC Corporate Services, Inc. ("CCC") appeals from the district

court's decision granting summary judgment under Federal Rule of Civil

Procedure 56 in favor of the defendant law firm, Snell & Wilmer, L.L.P. ("Snell")

---

[*] This order and judgment is not binding precedent except under the doctrines of
law of the case, *res judicata* and collateral estoppel. The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

and dismissing CCC's cause of action for lack of standing.  CCC's suit against Snell arose from Snell's legal representation of Lone Star Electronics Corporation ("Lone Star") in a Utah state court receivership proceeding.  The district court determined CCC lacked standing to pursue its malpractice claim, finding Lone Star never assigned any of its malpractice claims against Snell to CCC.  We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 and affirm.

## I.

In October 1998, Lone Star, through its president and chief executive officer John Cunningham, and corporate counsel William Van Fleet, retained Snell to represent Lone Star in a Utah state court receivership proceeding against DES, Inc. ("DES").  After allegedly having problems with Snell's representation, Mr. Cunningham terminated Snell in October 1999.  As a result of Snell's alleged misrepresentation, CCC asserts Lone Star lost substantial monies collectable from DES in the receivership proceeding before DES filed for bankruptcy.

In January 2000, the Board of Directors of Lone Star executed a written resolution assigning Lone Star's claims deriving from the DES bankruptcy to CCC.  The assignment was authorized by Lone Star chief executive officer and president Mr. Cunningham, who was also president of CCC, and stated in relevant

part:

> Lone Star Electronics Corporation does hereby assign, transfer and convey to CCC Corporate Services, Inc., all rights, titles and interests in and to any and all of its claims and causes of action against David Chang, Agama Systems, Inc., DES, Inc., Eric Chen, Eugene Chen, Chen Enterprises, L.L.C., Green Emerald Enterprises, Inc., Becky Taylor and Mark Hashimoto, together with any and all claims and causes of action against any person or entity affiliated with any of the foregoing persons and entities, together with any and all proceeds of any and all such causes of action against such persons and entities.

(Emphasis omitted.) Subsequent to this assignment, in April 2000, Modus Media International, Inc. ("Modus Media") purchased the stock ownership of Lone Star, effectively merging Lone Star into Modus Media.

Thereafter, CCC brought a malpractice action against Snell in Utah state court, for negligence, breach of fiduciary duty, breach of contract, fee forfeiture, and violations of Utah's Consumer Sales Practices Act, asserting Lone Star assigned its malpractice claim to CCC through the January 2000 assignment. Snell then removed the case to federal district court in Utah under diversity jurisdiction. After discovery and examination of the January 2000 assignment, Snell moved for summary judgment, arguing the January 2000 assignment unambiguously did not assign any of Lone Star's claims against Snell to CCC, but only assigned claims against persons or entities and their affiliates specifically named in the assignment. Snell asserted it was not specifically named or an

-3-

affiliate of any named person or entity in the assignment.

In response, CCC filed multiple briefs in opposition, as well as a number of affidavits and other documents in support of its position. Contrary to Snell's assertions, CCC argued the assignment was ambiguous and, therefore, the district court must consider establishing Lone Star's intent to transfer claims against Snell to CCC through the January 2000 assignment. Specifically, CCC submitted deposition testimony by Mr. Cunningham and Mr. Van Fleet stating they intended to include claims against Snell in the January 2000 assignment. In the alternative, CCC also asserted Snell was included in the assignment as an "affiliate" of Lone Star and Mark Hashimoto, the court-appointed receiver.

At the August 26, 2002 summary judgment hearing on Snell's motion, after hearing argument from both parties, the district court found the January 2000 assignment by Lone Star to CCC unambiguously did not assign to CCC any malpractice claims against Snell. However, the district court provided CCC with thirty days to allow a proper party to assign to CCC any of Lone Star's potential claims against Snell.

Subsequently, CCC filed an "amended assignment" dated September 2002,

which was identical to the January 2000 assignment but specifically added Snell as an additional entity against whom claims were assigned. This amended assignment was only authorized by Mr. Cunningham, the former chief executive officer and president of Lone Star. Filed along with the amended assignment was a post-hearing affidavit of Mr. Cunningham asserting his authority to amend the January 2000 assignment to include by name claims against Snell. Additionally, for the first time, Mr. Cunningham also generally asserted in conjunction with the January 2000 assignment, that he and Lone Star's Board of Directors orally agreed to assign Lone Star's claims against Snell to CCC.

At the subsequent November 20, 2002 hearing held to discuss the validity of the amended assignment, the district court granted Snell's motion for summary judgment, reaffirming its earlier finding the January 2000 assignment was unambiguous and did not transfer any of Lone Star's potential legal claims against Snell to CCC and finding the amended assignment invalid. In discussing the original assignment, the district court restated its finding Snell was not an affiliate of Mr. Hashimoto, a forensic accountant who only dealt with Snell in his position as the state court receiver in Lone Star's action against DES and a Chapter 7 trustee in a prior bankruptcy proceeding involving Snell. The district court explained that in both positions, Mr. Hashimoto was required to act as a

disinterested party and therefore could not be an "affiliate" of Snell. Further, the district court found CCC's argument Snell was an affiliate of Lone Star irrelevant because the January 2000 assignment did not specifically name either Lone Star or Snell.

Next, in addressing the validity of the September 2002 amended assignment, the district court determined the amended assignment was invalid because Mr. Cunningham lacked authority to amend the original assignment as evidenced by Mr. Cunningham's January 7, 2000 deposition testimony stating he no longer possessed any legal interest in Lone Star. Because Mr. Cunningham lacked any interest in Lone Star, the district court reasoned his signing of the amended assignment in September 2002 lacked legal force to affect the claims in question. For the amendment to have validity, the district court stated the amended assignment needed authorization by Modus Media or another entity currently possessing Lone Star's interest in the potential claims against Snell. Because the amended assignment lacked validity, the district court found the assignment inadmissible as parol evidence, and again determined the original assignment was unambiguous in that it "specifically names the individuals and entities involved in the claims that were effectively signed."

Finally, the district court addressed CCC's arguments raised at the hearing that the amended assignment could be used to reform the earlier assignment. In disagreeing with CCC, the district court found the amended assignment could not reform the January 2000 assignment because (1) it was not a reformation but a change to the assignment; (2) the parties never raised an allegation of mistake in the making of the original assignment; and (3) a valid reformation required the authority of someone with a current valid interest in Lone Star, namely, Modus Media.

Finding CCC failed to meet its burden of proving a valid claim against Snell, the district court granted Snell's motion for summary judgment and dismissed CCC's complaint with prejudice.

On appeal, CCC makes substantially the same arguments made during the proceedings before the district court. However, its appeal primarily rests on its general and previously alternative contention Lone Star "orally" assigned CCC its claims against Snell on the same day it executed the written assignment and, therefore, the district court erred in failing to address this issue, including

examination of parol evidence and state law in support thereof.[1]

## II.

We review the district court's grant of summary judgment de novo, applying the same legal standards used by the district court. *Amro v. Boeing Co.*, 232 F.3d 790, 796 (10th Cir. 2000). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Further, "[w]hen the procedural posture of the case is a Federal Rule of Civil Procedure 56 motion for summary judgment and plaintiff['s] standing is at issue, to prevail on such a motion a plaintiff must establish that there exists no genuine issue of material fact as to justiciability, and mere allegations of injury, causation, and redressability are insufficient." *Essence, Inc. v. City of Fed. Heights,* 285 F.3d 1272, 1280 (10th Cir. 2002) (quotation marks and citations omitted); *cf. Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 883-84 (1990). We also review de novo the district court's

---

[1] CCC also requests this court to rule, as a matter of law and for the purpose of judicial economy, that legal malpractice and related claims validly may be assigned in a business setting under Utah and Texas law. We decline to make such a ruling, in part because it is not relevant to our disposition of this case.

determination of standing. *Loving v. Boren*, 133 F.3d 771, 772 (10th Cir. 1998). "Plaintiffs bear the burden of proving standing with the manner and degree of evidence required at the particular stage of the litigation." *Hutchinson v. Pfeil*, 211 F.3d 515, 519 (10th Cir.) (quotation marks and citation omitted), *cert. denied*, 531 U.S. 950 (2002). Finally, we may affirm the district court's summary judgment dismissal "on any grounds for which there is a record sufficient to permit conclusions of law, even grounds not relied on by the district court." *SEC v. Cochran*, 214 F.3d 1261, 1267 (10th Cir. 2000).

## III.

We have carefully reviewed the parties' pleadings and briefs, the record on appeal, the district court's decision, and considered them in conjunction with the applicable law. We note the district court issued a thorough and well-reasoned Order granting summary judgment and conclude CCC asserts no reversible substantive errors on appeal. In sum, we conclude the district court correctly determined the January 2000 assignment unambiguously did not assign any potential claims of Lone Star against Snell to CCC and, therefore, properly did not consider parol evidence submitted by CCC. Furthermore, the district court correctly determined CCC's amended September 2002 assignment did not validly assign the contested claims to CCC. Given the thoroughness of the district

court's Order, we will not further articulate the facts, applicable law or reasoning applied by the district court in granting summary judgment, other than to more fully discuss CCC's contention the district court erred in granting Snell's summary judgment in spite of CCC's proffered evidence a valid collateral oral assignment by Lone Star to CCC of its claims against Snell existed.

On appeal, CCC contends the district court erred by failing to address its oral assignment argument, including Utah and Texas law allowing parol evidence to support such oral assignments. For the following reasons, the district court did not err in granting summary judgment.

During the course of the proceedings, it is clear CCC generally raised its oral assignment argument only as an alternative theory or "basis" for finding an assignment of the Snell claim to CCC. After the district court prohibited the use of parol evidence to establish the parties' intent behind the unambiguous, written assignment, CCC relied on general statements in Mr. Cunningham's affidavit to support its oral assignment argument. In his affidavit, Mr. Cunningham generally stated he intended for the January 21, 2000 written assignment to include assignment of the Snell claim to CCC, and on the same day the written assignment was executed, he, the Lone Star board and CCC "had agreed orally to

transfer the claims of Lone Star against Snell ... to CCC."

To withstand summary judgment, CCC is required to come forward with "'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). Although the district court did not expressly address CCC's alternative oral assignment argument in its final order, the record clearly shows CCC failed to provide any specific evidence establishing the existence of an oral assignment, except for Mr. Cunningham's self-serving statement that he, the Lone Star board and CCC orally agreed to transfer the Snell claim to CCC. Simply put, CCC's references to an alleged oral assignment in its briefs and Mr. Cunningham's affidavit only allege generally the existence of an oral agreement to transfer the Snell claim to CCC. Such unsupported conclusory allegations do not create a genuine issue of fact. *Harrison v. Wahatoyas*, 253 F.3d 552, 557 (10th Cir. 2001); *Lantec, Inc. v. Novel, Inc.*, 306 F.3d 1003, 1019 (10th Cir. 2002) (holding amended complaint insufficient to be considered an affidavit or to establish existence of an oral agreement where it was conclusory, vague and lacking in foundation). Because CCC failed to allege specific facts regarding the alleged oral assignment, we conclude the district court did not err in granting summary judgment in favor of Snell, and therefore, find it is unnecessary to remand the

-11-

issue to the district court for the purpose of specifically addressing the oral assignment issue and lack of facts in support thereof. Furthermore, we note CCC's reliance on an alternative oral assignment argument so late in the district court proceedings simply demonstrates a last minute attempt to keep its unmeritorious written assignment claim against Snell alive, after it appeared parol evidence regarding the parties intent may be prohibited.[2]

Accordingly, we **AFFIRM** the challenged district court decision granting Snell's motion for summary judgment for substantially the same reasons stated by that court in its November 20, 2002 oral ruling and January 13, 2003 Order, and further articulated herein.

**Entered by the Court:**

**WADE BRORBY**
United States Circuit Judge

---

[2] CCC's oral assignment argument was first only vaguely mentioned in its third brief submitted to the district court, and after Snell filed its motion for summary judgment. Again, CCC never alleges specific facts supporting this claim. Additionally, in deposition testimony submitted earlier in the proceedings, Mr. Van Fleet testified he was unaware of any potential claims against Snell at the time he drafted the January 2000 assignment, contrary to CCC's later assertions.